

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA,

Defendants.

---

**SEALED INDICTMENT**

24 Cr.

**24 CRIM  51**

## COUNT ONE
**(Conspiracy to Operate an Unlicensed Money Transmitting Business)**

The Grand Jury charges:

### OVERVIEW

1. Between in or about 2018 through at least in or about 2022, MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA, the defendants, operated an unlicensed money transfer business that was responsible for illicitly moving more than $65 million between the United States and countries in the Middle East, including Yemen, Turkey, Iraq, the United Arab Emirates, and Jordan, on behalf of others. AL-ZUBAIDI, HAUTER, and HAMZA facilitated hundreds of illicit money transfers, with each transfer ranging from thousands to hundreds of thousands of dollars. For the illicit transactions they completed, HAUTER, AL-ZUBAIDI, and HAMZA typically earned a commission of between one and six percent of the total amount transferred. To facilitate these illicit transfers, AL-ZUBAIDI, HAUTER, and HAMZA worked with other members of an international network of money brokers to transfer money through an informal money transmitting system known as "*hawala*."

## Background On *Hawala*

2.   *Hawala* is a method of moving money outside the formal banking system that allows one party to transfer money to another party without any physical money actually moving.[1] For example, if an individual in the United States ("Party A") wanted to send $10,000 to an individual in Yemen ("Party B"), Party A could approach a *hawala* broker ("Broker A"), give Broker A the $10,000 and the relevant details of the transaction such as the name of Party B and the location where Party B is to receive the money (i.e., Yemen). Broker A would then contact a *hawala* broker in Yemen ("Broker B") and ask Broker B to give Party B the $10,000. Broker B would then pay Party B the $10,000 in local currency in Yemen, and Broker A would later settle the $10,000 debt owed to Broker B. Broker A and B would each receive a commission. As shown in this example, no actual money was sent from Party A in the United States to Party B in Yemen.

3.   The money transfers that *hawala* brokers complete for their customers are cheaper, swifter, and more anonymous than the formal banking system. As shown in the example above, *see supra* ¶ 2, unlike a traditional bank transfer such as a wire transfer, there are no official records of *hawala* transfers, and it is difficult to trace the original source of the money. Because of those attributes, *hawala* networks are often used by money launderers and other criminals to transfer criminal proceeds. Typically, money brokers engaged in *hawala* communicate only limited information about the source and the beneficiary of the funds they move. For example, they often collect funds from their customers in cash or money orders and then move the funds through shell companies to disguise the source and nature of the funds involved in the transaction. As explained below, MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and

---

[1] Individuals such as MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA, the defendants, who use *hawala* to move money, are sometimes referred to as "*hawala* brokers" or *hawaladars*.

2

ABDULKADER NOORI HAMZA, the defendants, used similar methods in this scheme.

### Means and Methods of the Conspiracy

4. MOHANAD AL-ZUBAIDI, the defendant, purported to operate at least four legitimate companies based in Texas or New Jersey: Itaqwen, LLC, Mirage Energies Inc., Mirage Auto Group Inc., and Mirage Life Style Inc. In order to open bank accounts and transfer funds through those accounts, AL-ZUBAIDI falsely represented to banks and other financial institutions at which he opened financial accounts for Mirage Energies Inc., Mirage Auto Group Inc., and Mirage Life Style Inc. (together, the "Mirage Companies") that he used the Mirage Companies to operate an international trading and investment business or to sell cars. For example, in bank account opening records for one of the Mirage Companies, AL-ZUBAIDI falsely represented to the bank that the nature of his business was "AUTOMOBILE AND OTHER MOTOR VEHICLE MERCHANT WHOLESALERS." In truth and in fact, and as AL-ZUBAID knew, he was not operating a legitimate automobile business (or any other legitimate business) but was operating an unlicensed money transfer business.

5. Throughout the period charged in this Indictment, individuals, companies, and other illicit money brokers based outside of the United States contacted MOHANAD AL-ZUBAIDI, the defendant, directly—or through other money brokers like SHAKER SALEH MOHAMMED HAUTER, the defendant—to enlist AL-ZUBAIDI to transfer money to others on their behalf in exchange for a fee. Typically, AL-ZUBAIDI helped transfer funds between the United States and countries in the Middle East like Yemen, Turkey, Iraq, the United Arab Emirates, and Jordan. To carry out the money transfers, AL-ZUBAIDI typically received money into bank accounts he had opened in the name of Itaqwen, LLC or the Mirage Companies in the form of cash or money order deposits. Then, he used the money in those accounts to send wire

transfers or make credit card payments to the intended recipients (if the money was coming into the United States) or other intermediaries (if the money was going to the Middle East). At the same time, AL-ZUBAIDI coordinated directly with other money brokers based outside of the United States to ensure that the illicit international transactions were completed successfully. Each time AL-ZUBAIDI conducted such a transaction, he typically received a commission of one or two percent of the total amount of the transfer.

6. ABDULKADER NOORI HAMZA, the defendant, is the father of MOHANAD AL-ZUBAIDI, the defendant. HAMZA worked with AL-ZUBAIDI to operate their unlicensed money transfer business. For example, HAMZA picked up cash from other members of the scheme (including SHAKER SALEH MOHAMMED HAUTER, the defendant) at various locations, including in the Bronx, New York. Then, HAMZA delivered that cash to AL-ZUBAIDI directly or used it to purchase money orders that HAMZA later deposited into bank accounts in the name of the Mirage Companies. HAMZA was also the sole-signatory on at least three bank accounts opened in the name of Mirage Auto Group Inc. and was, for a short period, the Director of Mirage Auto Group Inc. HAMZA also used a bank account and credit card account opened in his own name to complete unlicensed money transfers as part of this scheme.

7. SHAKER SALEH MOHAMMED HAUTER, the defendant, ran his own unlicensed money transfer business based in the Bronx, New York, and served as an intermediary money broker for MOHANAD AL-ZUBAIDI and ABDULKADER NOORI HAMZA, the defendants. HAUTER regularly coordinated unlicensed money transfers for AL-ZUBAIDI and HAMZA by directing customers to them or by enlisting them to complete transactions for HAUTER's own customers. HAUTER or individuals working for HAUTER also regularly delivered cash to HAMZA that was deposited into bank accounts belonging to the Mirage

Companies and used to complete illicit money transfers. In addition, HAUTER regularly connected AL-ZUBAIDI with other money brokers based outside of the United States to facilitate additional illicit money transfers. Like AL-ZUBAIDI, HAUTER typically received a commission for each illicit transaction he was involved in, which was often greater than the commission received by AL-ZUBAIDI. HAUTER's commissions ranged from one to six percent of the total amount of each transfer.

8. At all times relevant to this Indictment, MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA, the defendants, did not have a license to engage in money transfers and did not register their money transfer business with the United States Department of the Treasury.

## Statutory Allegations

9. From at least in or about 2018 through at least in or about 2022, in the Southern District of New York and elsewhere, MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960(b)(1)(A) and (b)(1)(B).

10. It was a part and object of the conspiracy that MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA, the defendants, and others known and unknown, would and did knowingly conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business, which affected interstate or foreign commerce, and (i) was operated without an appropriate money

transmitting license in a State where such operation is punishable as a misdemeanor and a felony under State law, and (ii) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section.

Overt Acts

11. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

 a. On or about November 21, 2021, SHAKER SALEH MOHAMMED HAUTER, the defendant, exchanged WhatsApp messages with a person to arrange a transfer of one million Euros from Paris to Dubai.

 b. On or about August 4, 2021, MOHANAD AL-ZUBAIDI, the defendant, exchanged text messages with ABDULKADER NOORI HAMZA, the defendant, to arrange for HAMZA to pick up cash from HAUTER at a location in the Bronx, New York.

 c. On or about November 30, 2021, AL-ZUBAIDI sent a wire transfer of $31,000 to a business located in Manhattan, New York.

 d. On or about March 17, 2022, AL-ZUBAIDI exchanged WhatsApp messages with HAUTER to arrange a transfer of $100,000.

 e. On or about March 25, 2022, AL-ZUBAIDI exchanged WhatsApp messages with a person to arrange a transfer of $221,000 to the United States from Turkey.

 f. On or about July 27, 2022, HAMZA met with HAUTER at a location in the Bronx, New York, to pick up cash.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Operation of an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

12. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth therein.

13. From at least in or about 2018 through at least in or about 2022, in the Southern District of New York and elsewhere, MOHANAD AL-ZUBAIDI, SHAKER SALEH MOHAMMED HAUTER, and ABDULKADER NOORI HAMZA, the defendants, knowingly conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business, which affected interstate and foreign commerce, and (i) was operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor and a felony under State law, and (ii) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, to wit, HAUTER, AL-ZUBAIDI, and HAZMA operated unlicensed money transmitting businesses which they used to transfer more than $65 million between the United States and countries in the Middle East, including Yemen, Iraq, Turkey, the United Arab Emirates, and Jordan, among other locations, over the course of more than hundreds transfers.

(Title 18, United States Code, Sections 1960 and 2.)

## COUNT THREE
### (Bank Fraud)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth therein.

7

15. From at least in or about 2018 through at least in or about 2022 in the Southern District of New York and elsewhere, MOHANAD AL-ZUBAIDI, the defendant, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, AL-ZUBAIDI engaged in a scheme to make false statements to financial institutions in order to obtain funds under the custody and control of those financial institutions.

(Title 18, United States Code, Sections 1344 and 2.)

## FORFEITURE ALLEGATIONS

16. As a result of committing the offenses alleged in Counts One and Two of this Indictment, SHAKER SALEH MOHAMMED HAUTER, MOHANAD AL-ZUBAIDI, and ABDULKADER NOORI HAMZA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

17. As a result of committing the offenses alleged in Count Three of this Indictment, MOHANAD AL-ZUBAIDI, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

18. If any of the above-described forfeitable property, as a result of any act or omission

8

of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

                              (Title 18, United States Code, Section 982;
                              Title 21, United States Code, Section 853; and
                              Title 28, United States Code, Section 2461.)

_____             _____
FOREPERSON                                             DAMIAN WILLIAMS
1/29/24                                                      United States Attorney